### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

KEYAUN LEE,

**Plaintiff,**

v.                                                    **CASE NO. 22-3296-JWL**

UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY, et al.,

**Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this pro se action under 42 U.S.C. § 1983. Plaintiff is a pretrial detainee at Wyandotte County Detention Center (WCDC). The Court granted Plaintiff leave to proceed *in forma pauperis*. (Doc. 5). This matter is before the Court for screening Plaintiff's Complaint under 28 U.S.C. § 1915A.

## I.  Nature of the Matter before the Court

Plaintiff includes the following allegations in his Complaint (Doc. 1) and attachments (Doc. 1-1). Plaintiff states that he has a history of serious medical conditions, including paralysis, scoliosis, and neurogenic bladder, stemming from a spinal cord injury resulting from multiple gunshot wounds. He suffers from constant pain and has a Foley catheter, a colostomy bag, and also uses Depends due to leakage from his catheter. He was prescribed extensive pain medications and an anti-coagulant by his treating physician before he was detained.

When Plaintiff arrived at the WCDC on December 29, 2021, he was housed in the infirmary on a narrow cot next to the showers. He remained in the infirmary for three months. WCDC personnel would not allow him to have his prescribed pain medication, instead only giving him

1

Tylenol, which is not effective.  In the infirmary, he had to share a bathroom with five other offenders at times, and WCDC staff limited the amount of toilet paper the inmates could have. Also, Plaintiff states he had very limited access to water, and he must stay hydrated to keep his kidneys functioning properly.  He asserts that when he was at home, he could self-catheterize, but he was unable to do so at the WCDC because the process requires more counter space and a "fairly" hygienic bathroom.  Plaintiff was and continues to be denied reasonable hygienic supplies, Depends, and regular catheter changes.  He is not allowed to shower regularly or have clean linens when needed, despite the fact that his colostomy bag leaks.

Plaintiff's physical condition began to deteriorate.  Voiding became painful, as did eating, sleeping, standing, and sitting due to being confined to the narrow cot and not allowed to move around for long periods of time.  He experienced intense abdominal pain, blood in his urine, cold chills, upset stomach, loss of appetite, stomach cramps, a burning sensation, and discharge.  He had visible build-up on his catheter.  He finally saw a doctor, Dr. Omni, around the second week of January, 2022.  Plaintiff reported persistent pain and swelling in his abdomen, as well as redness and a rash.  Despite kidney abnormalities, blood in his urine, and increased pelvic pressure, Dr. Omni and Wellpath were not responsive and failed to order any diagnostic tests.  Plaintiff was eventually transferred to the emergency room where it was discovered that he had a bladder infection and severe hydronephrosis.  He was prescribed an antibiotic and instructed to return for follow-up.  Plaintiff claims that he received no follow-up care.

Plaintiff further states that as of June 26, 2022, Wellpath continued to deny him reasonable hygienic medical supplies, Depends, or regular catheter changes.  He still had not been seen by a specialist about his kidneys and blood clots in his catheter bag.  Dr. Omni continued to disregard the medication prescribed by Plaintiff's treating physician before incarceration, only allowing

Plaintiff to have Tylenol.  On June 29, 2022, unqualified nursing personnel removed his catheter improperly, causing a relapse of Plaintiff's symptoms from January.

As Count I of his Complaint (Doc. 1), Plaintiff brings a state law negligence claim "for failure to maintain and inspect" the WCDC.  As Count II, Plaintiff alleges violation of his Fourteenth Amendment due process rights by depriving him of clean linens, adequate running water, and the ability to shower, and by failing to provide sanitary conditions at the WCDC.  He asserts that this failure led to infection and hospitalization.  As Count III, Plaintiff alleges deliberate indifference to his serious medical needs, asserting he was deprived of medical care and the surgeon's protocol for pain management was ignored.  As Count IV, Plaintiff alleges his rights were violated by the failure to refer him to a specialist and a physical therapist.  He names the County and Wellpath as defendants to this count.  As Count V, Plaintiff alleges Wellpath negligently failed to train personnel about spinal cord injuries, neurogenic bladder, and infectious disease transmission.

In a handwritten document titled "Complaint" (Doc. 1-1) attached to the Complaint, Plaintiff includes factual allegations that are not in the Complaint and brings additional claims. Under the heading "Claims for Relief" (Doc. 1-1, at 26), he lists two claims: (1) failure to protect under the Eighth Amendment; and (2) deliberate indifference to medical needs.

Plaintiff asserts elsewhere in Doc. 1-1 that Defendants violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act based on their failure to accommodate or provide him with necessary supplies to manage his condition and failure to regularly change and monitor his catheter.  He alleges that the WCDC is chronically underfunded and understaffed, and the County breached its duty of care by awarding the health care contract for the WCDC to the lowest bidder and denying diagnostic testing to inmates.  He asserts that Wellpath places its own

profits ahead of the health of inmates by deliberately refusing to properly staff the infirmary at the WCDC, by negligently hiring inexperienced nurses and medical personnel, and by not providing adequate supervision by a physician.  He claims that inmates with chronic health conditions are denied care.  Plaintiff specifically asserts *Monell* liability on the part of the County.

Plaintiff names as defendants the Unified Government of Wyandotte County; the Board of Commissioners of Wyandotte County, Kansas; Daniel Soptic, Sheriff and Administrator of the WCDC; David Thaxon, Warden of the WCDC; Charles Patrick, Major at the WCDC; Wellpath, LLC; D. Dull, Health Services Administrator with Wellpath; Wendy Torres, nurse with Wellpath; and Dr. Omni, physician with Wellpath.  Plaintiff seeks redress in the form of damages for the emotional and physical injuries he suffered, as well as declaratory and injunctive relief and punitive damages.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)– (2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the

complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Additional Information Needed

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the WCDC. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915.

## IV. Motion for Preliminary Injunction/TRO

Plaintiff has filed a Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 3) seeking an order requiring Defendants to set a ceiling on the inmate population at the WCDC; prohibiting the provision of medical care as a privilege when it is a right; requiring Defendants to arrange an immediate consultation with a specialist and to follow a plan of treatment consistent with the orders of such specialist; requiring Defendants to give Plaintiff his prescribed medication; requiring Defendants to provide Plaintiff with appropriate supplies to manage his catheter; and requiring Defendants to conduct a biopsy and urinary analysis on Plaintiff.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a

likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted at this time; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. The Court denies the motion without prejudice to the Court's reconsideration of the motion upon review of the *Martinez*

Report.  The Court will reconsider Plaintiff's request for injunctive relief after reviewing the Report.

### V.  Motion to Modify Original Stipulated Orders (Doc. 4)

Plaintiff asks the Court to modify orders or consent decrees entered in prior lawsuits regarding the operation and conditions at the WCDC.  He states that current staffing levels, housing of inmates, and the training of staff do not comply with the standards set forth in the 1987 or 2001 agreed orders, and the population limits have not been followed.  He further alleges that provisions in the prior orders regarding healthcare have also not been followed.

Plaintiff does not state which prior case or cases he is referencing, but there were consent decrees related to the operation of the WCDC entered in *Woodson v. Ash*, Case No. 85-cv-3049. However, the Court entered an order on September 13, 2011 (Doc. 339) terminating all prospective relief granted by earlier orders in that case, leaving no ongoing decrees to modify or enforce.

Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Modify Original Stipulated Orders (Doc. 4) is **denied.**

**IT IS FURTHER ORDERED** that**:**

(1)    Officials responsible for the operation of the WCDC are directed to undertake a review of the subject matter of the Complaint:

a.    To ascertain the facts and circumstances;

b.    To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

c.      To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(2)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court **by February 17, 2023** and served on Plaintiff.  If the WCDC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The WCDC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. 5.4.2(b).   Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(3)     Authorization is granted to the officials of WCDC to interview all witnesses having knowledge of the facts, including Plaintiff.

(4)     No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.  If the Complaint survives screening, the Court will enter a separate order for service that sets an answer deadline.

(5)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answer or response to the Complaint and the report ordered herein.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

Copies of this order shall be transmitted to Plaintiff, to the Wyandotte County Sheriff, and to the Wyandotte County District Attorney.

**IT IS SO ORDERED.**

**Dated January 27, 2023, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**