## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KEYAUN LEE,

**Plaintiff,**

v.                                                    CASE NO. 22-3296-JWL

UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY, et al.,

**Defendants.**

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff brings this pro se action under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed *in forma pauperis*.  Although Plaintiff is currently in the custody of the Kansas Department of Corrections, his claims arose during his detention at the Wyandotte County Detention Center ("WCDC") in Kansas City, Kansas.  The Court conducted an initial screening of Plaintiff's Complaint and entered a Memorandum and Order (Doc. 6) ("M&O") directing the officials responsible for the operation of the WCDC to prepare a *Martinez* Report.  The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A."  (Doc. 6, at 6.)  The *Martinez* Report (Doc. 11) has now been filed, and the Court will screen the Complaint in light of the Report.  The Court's screening standards are set forth in the Court's M&O.

**I.  Nature of the Matter before the Court**

Plaintiff includes the following allegations in his Complaint (Doc. 1) and attachments (Doc. 1-1).  Plaintiff states that he has a history of serious medical conditions, including paralysis,

scoliosis, and neurogenic bladder, stemming from a spinal cord injury resulting from multiple gunshot wounds. He suffers from constant pain and has a Foley catheter, a colostomy bag, and also uses Depends due to leakage from his catheter. He was prescribed extensive pain medications and an anti-coagulant by his treating physician before he was detained.

When Plaintiff arrived at the WCDC on December 29, 2021,[1] he was housed in the infirmary on a narrow cot next to the showers. He remained in the infirmary for three months.[2] WCDC personnel would not allow him to have his prescribed pain medication, instead only giving him Tylenol, which is not effective.[3] [REPORTED PAIN 8/10 ON 1/6/22; CAME IN FROM JACKSON COUNTY WITH ONLY TYLENOL PRESCRIBED; P.22; DID NOT REPORT ON ANY OTHER PAIN MEDS; TYLENOL INCREASED ON 2/17/22 IN RESPONSE TO COMPLAINTS OF NERVE PAIN AND BACK PAIN; P. 36] In the infirmary, he had to share a bathroom with five other offenders at times, and WCDC staff limited the amount of toilet paper the inmates could have. Also, Plaintiff states he had very limited access to water, and he must stay hydrated to keep his kidneys functioning properly. He asserts that when he was at home, he could self-catheterize, but he was unable to do so at the WCDC because the process requires more counter space and a "fairly" hygienic bathroom. Plaintiff alleges that he was denied reasonable hygienic supplies, Depends, and regular catheter changes. [ORDERED BIWEEKLY/TWICE MONTHLY CATH CHANGES ON 1/6/22 DUE TO HISTORY OF UTI; P. 22-23] He was not allowed to shower regularly or have clean linens when needed, despite the fact that his colostomy bag leaked.

---

[1] According to the *Martinez* Report, Plaintiff arrived at the WCDC on January 4, 2022. Doc. 11-1, at 1.

[2] The Report states that Plaintiff was housed in the medical observation unit until June 30, 2022. Doc. 11-1, at 2.

[3] According to the Report, the only pain medication prescribed for Plaintiff at Jackson County was Tylenol. Doc. 11-2, at 11.

Plaintiff asserts that his physical condition began to deteriorate.  Voiding became painful, as did eating, sleeping, standing, and sitting due to being confined to the narrow cot and not allowed to move around for long periods of time.  He experienced intense abdominal pain, blood in his urine, cold chills, upset stomach, loss of appetite, stomach cramps, a burning sensation, and discharge.  He had visible build-up on his catheter.  He states that he finally saw a doctor, Dr. Omni,[4] around the second week of January, 2022.[5]  Plaintiff reported persistent pain and swelling in his abdomen, as well as redness and a rash.  Despite kidney abnormalities, blood in his urine, and increased pelvic pressure, Dr. Omni and Wellpath were not responsive and failed to order any diagnostic tests.  Plaintiff was eventually transferred to the emergency room where it was discovered that he had a bladder infection and severe hydronephrosis.[6]  He was prescribed an antibiotic and instructed to return for follow-up.  Plaintiff claims that he received no follow-up care.

Plaintiff further states that as of June 26, 2022, Wellpath continued to deny him reasonable hygienic medical supplies, Depends, or regular catheter changes.  He still had not been seen by a specialist about his kidneys and blood clots in his catheter bag.  Dr. Omni continued to disregard the medication prescribed by Plaintiff's treating physician before incarceration, only allowing Plaintiff to have Tylenol.  On June 29, 2022, unqualified nursing personnel removed his catheter improperly, causing a relapse of Plaintiff's symptoms from January.

---

[4] It does not appear from the medical records that Plaintiff was ever treated by a "Dr. Omni" while at the WCDC.

[5] The Report states that Plaintiff was seen by the on-site nurse practitioner on January 6, 2022, two days after his arrival at the WCDC.  Doc. 11-1, at 2.

[6] The medical records do not show any emergency room visits or hospitalizations while Plaintiff was at the WCDC.  The records do show that Plaintiff was previously sent to the Truman Medical Center for evaluation *from the Jackson County Detention Center*.  Doc. 11-2, at 11.

As Count I of his Complaint (Doc. 1), Plaintiff brings a state law negligence claim "for failure to maintain and inspect" the WCDC.  As Count II, Plaintiff alleges violation of his Fourteenth Amendment due process rights by depriving him of clean linens, adequate running water, and the ability to shower, and by failing to provide sanitary conditions at the WCDC.  He asserts that this failure led to infection and hospitalization.  As Count III, Plaintiff alleges deliberate indifference to his serious medical needs, asserting he was deprived of medical care and the surgeon's protocol for pain management was ignored.  As Count IV, Plaintiff alleges his rights were violated by the failure to refer him to a specialist and a physical therapist.  He names the County and Wellpath as defendants to this count.   As Count V, Plaintiff alleges Wellpath negligently failed to train personnel about spinal cord injuries, neurogenic bladder, and infectious disease transmission.

In a handwritten document titled "Complaint" (Doc. 1-1) attached to the Complaint, Plaintiff includes factual allegations that are not in the Complaint and brings additional claims. Under the heading "Claims for Relief" (Doc. 1-1, at 26), he lists two claims: (1) failure to protect under the Eighth Amendment; and (2) deliberate indifference to medical needs.

Plaintiff asserts elsewhere in Doc. 1-1 that Defendants violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act based on their failure to accommodate or provide him with necessary supplies to manage his condition and failure to regularly change and monitor his catheter.   He alleges that the WCDC is chronically underfunded and understaffed, and the County breached its duty of care by awarding the health care contract for the WCDC to the lowest bidder and denying diagnostic testing to inmates.  He asserts that Wellpath places its own profits ahead of the health of inmates by deliberately refusing to properly staff the infirmary at the WCDC, by negligently hiring inexperienced nurses and medical personnel, and by not providing

adequate supervision by a physician.  He claims that inmates with chronic health conditions are denied care.  Plaintiff specifically asserts *Monell* liability on the part of the County.

Plaintiff names as defendants the Unified Government of Wyandotte County; the Board of Commissioners of Wyandotte County, Kansas; Daniel Soptic, Sheriff and Administrator of the WCDC; David Thaxon, Warden of the WCDC; Charles Patrick, Major at the WCDC; Wellpath, LLC; D. Dull, Health Services Administrator with Wellpath; Wendy Torres, nurse with Wellpath; and Dr. Omni, physician with Wellpath.  Plaintiff seeks redress in the form of damages for the emotional and physical injuries he suffered, as well as declaratory and injunctive relief and punitive damages.

## II.  Discussion

As described above, Plaintiff filed a Complaint on the court-approved form (Doc. 1). However, he also filed a handwritten document titled "Complaint" (Doc. 1-1).  Some of the allegations in the two documents overlap, but Doc. 1-1 includes information and claims that are not included in Doc. 1.  The Court has screened Doc. 1 and disregarded any additional claims mentioned in Doc. 1-1 that were not included in Doc. 1.

### A.  Conditions of Confinement

A pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, and "the Eighth Amendment standard provides the benchmark for such claims."  *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)).  "[A] pretrial detainee [must] be provided 'humane conditions of confinement by ensuring the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee his safety.'"  *Routt*, 764 F. App'x at 770 (citing *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188

5

(10th Cir. 2003) (ellipsis, brackets, and internal quotation marks omitted)); *see also Kelley v. Wright*, No. 2:19-CV-02278-JAR-JPO, 2019 WL 6700375, at *10 (D. Kan. Dec. 9, 2019). However, "jail conditions may be restrictive and even harsh without violating constitutional rights." *Id.* (citing *Ledbetter*, 318 F.3d at 1188 (internal quotation marks omitted)). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

To establish liability, a pretrial detainee must show: "(1) the official[ ] knew of and disregarded an excessive risk to his health and safety, and (2) the alleged deprivation was sufficiently serious." *Routt*, 764 F. App'x at 770 (citing *Ledbetter*, 318 F.3d at 1188 (citation, brackets, and internal quotation marks omitted)). The plaintiff has to establish "deliberate indifference." The deliberate indifference standard includes both an objective and subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Martinez*, 430 F.3d 1304. The objective component is met only if the condition complained of is "sufficiently serious." *Farmer*, 511 U.S. at 832.

With regard to the subjective component, the plaintiff must prove that the defendant acted with a culpable state of mind. *Farmer*, 511 U.S. at 834, 837 ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001);

*Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) (Deliberate indifference "requires both knowledge and disregard of possible risks."). It is not enough to establish that the official *should have* known of the risk of harm. *Farmer*, 511 U.S. at 837–38; *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998).

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain*, 264 F.3d at 974 (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.*; *Barney*, 143 F.3d at 1311. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations. . . may meet the standard despite a shorter duration."[7] *Id.*

On the other hand, the Court is mindful of the Supreme Court's mandate that the judicial branch accord deference to prison authorities in the running of prisons and jails, particularly when a state prison system is involved. *See Turner v. Safley*, 482 U.S. 78, 85 (1987). "[M]aintaining internal security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

---

[7]     For example, A "filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). "Courts have repeatedly held that similar and far worse conditions fail to state a claim because of the brief nature of the incarceration." *Barney*, 143 F.3d at 1311 (citing *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994)(deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993)(eleven day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); Harris v. Fleming, 839 F.2d 1232, 1235–36 (7th Cir. 1988)(five day stay in "filthy, roach-infested cell" not unconstitutional); *Ogbolu v. McLemore*, 107 F.3d 21, *2 (10th Cir. 1997)).

"Overcrowding itself is not an unconstitutional condition, and becomes actionable only if it leads to deprivation of food, proper sanitation, or medical care, or where it is accompanied by dangerous conditions." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Courts have held that there is no constitutional violation for mere triple-celling or triple-bunking pretrial detainees.  *See, e.g., Rhodes*, 452 U.S. at 348 (holding that even though a jail housed 38% more inmates than its design capacity, "[t]he double celling made necessary by the unanticipated increase in prison population" did not violate the Eighth Amendment because no deprivation of "essential food, medical care, or sanitation" occurred); *Hubbard v. Taylor*, 538 F.3d 229 (3rd Cir. 2008) (triple-celling was rationally related to prison officials' legitimate government interest); *North v. White*, 152 F. App'x 111 (3rd Cir. 2005) (finding no Eighth Amendment violation where, due to a temporary influx of inmates, facility resorted to triple-celling of one-third of inmates for a month, since facility was otherwise well maintained; and ventilation, light, sanitation, and food met applicable minimal standards); *see also Bell*, 441 U.S. at 534 (the fact that the conditions of pretrial detention may interfere with a person's desire to live as comfortably as possible and with as little restraint as possible dose not convert the conditions in the jail facility to "punishment" within the constitutional sense)).  Plaintiff must allege facts showing some plausible adverse effects from the complained of conditions.  *See Dittmeyer v. Whetsel*, 91 F. App'x 111, 119 (10th Cir. 2004) (plaintiff did not show how overcrowding injured him).

The frequency and duration of the condition, as well as the measures employed to alleviate the condition, must be considered is assessing whether the condition is sufficiently serious to support a constitutional claim. *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001).  More fundamentally, Plaintiff must show that each defendant was personally responsible for the conditions under which Plaintiff was held in the jail.  An essential element of a civil rights claim

against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Plaintiff's generalized allegations that the WCDC is in an advanced state of deterioration, unsanitary, outdated, understaffed, overcrowded, and underfunded do not state a claim. Plaintiff does not include sufficient detail about the circumstances, nature, and duration of his exposure to each alleged condition or demonstrate how each condition injured him. For instance, his claim that the WCDC is at nearly twice the capacity it was originally designed to house does not, in and of itself, constitute a violation of Plaintiff's rights.

Plaintiff also includes the more specific claim that he was not provided with adequate supplies to care for his catheter, was not allowed to shower frequently enough, and was not given clean linens as often as he needed. However, Plaintiff does not allege that any individual was aware of his need, was aware that the deprivation of these items posed a serious risk to Plaintiff, and disregarded that risk. Further, Plaintiff does not describe with particularity what supplies he did have, what he needed, how often he was allowed to shower, how often he needed to shower, how often he received clean linens, or how often he needed them. Without such allegations, Plaintiff does not state a constitutional claim for deliberate indifference.

Finally, Plaintiff seems to assert a conditions of confinement claim related to "infection." He claims that he developed an infection of his kidneys due to the being housed next to the showers and the WCDC not being cleaned adequately.  The Complaint does not include specific facts showing that the conditions as alleged by Plaintiff posed a substantial risk of serious harm or that any defendant was aware of the specific risk and disregarded it.  Further, Plaintiff's medical records do not support his claim of a kidney infection.  Rather, the records show Plaintiff arrived at the WCDC with a urinary tract infection and then continued to suffer from repeated UTIs related to his need for a catheter.  The records also show that, in each instance, Plaintiff received prompt treatment.  Plaintiff's entirely conclusory allegations that conditions at the WCDC caused "infection" are not sufficient to state a claim under the Eighth Amendment.

### B.  Medical Care

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishments.[8]  The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).  As discussed above, the "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind."  *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez*, 430 F.3d at 1304.

---

[8]   The protections provided by the Eighth Amendment do not directly apply to pretrial detainees, such as Plaintiff. *See Bell,* 441 U.S at 535 n.16.  However, under the Fourteenth Amendment, pretrial detainees are "entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *Shue v. Laramie Cty. Det. Ctr.*, 594 F. App'x 941, 944–45 (10th Cir. 2014) (quoting *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009)).

In the objective analysis, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer*, 511 U.S. at 834. A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Martinez*, 430 F.3d at 1304 (quoting *Farmer*, 511 U.S. at 834 (quotation omitted)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted)).

Plaintiff alleges that he did not receive proper care at the WCDC. His medical records do not support his allegations. According to the records, Plaintiff arrived at the WCDC from the Jackson County Detention Center with a UTI and was promptly treated. When he developed recurring UTIs, he was promptly treated each time. He alleges that he had been prescribed pain medication that the WCDC and Wellpath failed to continue. However, the records show he arrived with a prescription for Tylenol and did not mention any other prescriptions for pain medication upon admission. Plaintiff alleges that he developed a kidney infection at the WCDC and had to be taken to the emergency room, but the records show no such diagnosis or hospitalization. He claims he should have been referred to a specialist and physical therapist, but a mere difference of opinion between a detainee and prison medical personnel regarding diagnosis or reasonable

treatment does not constitute cruel and unusual punishment.  *See Estelle*, 429 U.S. at 106-07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) (Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984) (A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.).

The medical records indicate that Plaintiff was repeatedly monitored, assessed, and treated by Wellpath medical staff.  Where there have been a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints."  *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976).

### C.  Negligence

Counts I and V of the Complaint allege negligent conduct.  Claims under § 1983 may not be predicated on mere negligence.  *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) (holding that inmate who slipped on a pillow negligently left on a stairway by sheriff's deputy failed to allege a constitutional violation); *see also Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) ("negligence and gross negligence do not give rise to section 1983 liability"). While Plaintiff asserts that he is bringing a state law negligence claim in Count I, he has not alleged the elements of such a claim.  Moreover, this claim cannot proceed in the absence of an actionable § 1983 claim.

### D.  Injunctive Relief

Plaintiff's request for injunctive relief is moot.  Plaintiff is no longer incarcerated at the

WCDC.   According to the Martinez Report, he was transferred to the custody of the Kansas Department of Corrections on March 3, 2023.  *See* Doc. 11, at 2.

Because Plaintiff's request relates solely to alleged wrongdoing on the part of WCDC and Wellpath employees, the Court would be unable to provide Plaintiff with effective relief and his requests for injunctive relief are moot.  Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies.  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).  "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing."  *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*.  Consequently, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."  *O'Shea v. Littleton*, 414 U.S. 488, 495 1974).  The Tenth Circuit has applied this principle to § 1983 actions brought by inmates and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement.  *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983

claim for injunctive relief moot); *see also Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (holding that "RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is released from custody.") (citations omitted).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to plaintiff. Because Plaintiff is no longer detained at the WCDC, his claims for injunctive relief are moot and subject to dismissal.

### E. Claim for Damages

Section 1997e(e) . . . provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).   Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Plaintiff's request for compensatory damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e).   Plaintiff has not described any physical injury that was *caused by* the alleged deprivations of his constitutional rights.   The Court finds that Plaintiff's claim for actual or compensatory damages is subject to being dismissed unless he alleges facts showing a prior physical injury.

Plaintiff also seeks punitive damages, which are available in a § 1983 lawsuit.  However, they "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"

*Searles*, 251 F.3d at 879; (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992); *see also Patel v. Wooten*, 264 F. App'x 755, 760 (10th Cir. 2008) (determining, in the First Amendment context, that prison officials' actions did not "rise to the level of evil intent or reckless or callous indifference to sustain a jury award of punitive damages")).  Plaintiff's allegations do not support the finding of evil intent or reckless indifference necessary to make a claim for punitive damages.

## III.  Conclusion

In light of the *Martinez* Report and on further review of the Complaint, the Court is considering dismissal of this matter for failure to state a claim on which relief can be granted. Plaintiff will be given an opportunity to respond to the *Martinez* Report and to show good cause why dismissal should not be entered.  Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **May 26, 2023,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed for failure to state a claim.

**IT IS SO ORDERED.**

**Dated April 26, 2023, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**